# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICHARD WINNING,**

    **Plaintiff,**

**v.**                                                                                     **Civil Action No. 1:11cv94**
                                                                                               **Judge Keeley**

**ADRIAN HOKE, Warden,**
**TOM CHENOWETH, IMC,**
**DEBBIE CONTRAL, and**
**RANDY SHEEVES, B-1 Unit Manager,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on June 13, 2011, by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. On June 21, 2011, the plaintiff was granted permission to proceed *in forma pauperis.* No partial filing fee was required. On August 11, 2011, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted at that time. Therefore, the Defendants were directed to answer the complaint. On August 17, 2011, the plaintiff filed a motion for appointed counsel. On September 2, 2011, the defendants filed a motion to dismiss. On September 6, 2011, notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to the Plaintiff advising him of his right to file a response to the defendant's dispositive motion. By Order entered September 8, 2011, plaintiff's motion for appointed counsel was denied. Plaintiff filed a response to the Defendant's motion on September 21, 2011. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.01, *et seq*.

## II. Contentions of the Parties

### A. Plaintiff's Complaint

In his complaint, the plaintiff alleges that on March 2, 2011, based on an uninvestigated complaint made by another inmate about him, he was moved from Unit B-1 at Huttonsville Correctional Center ("HCC") to Unit B-2, the only other unit for which his classification made him eligible. Fearing for his life on Unit B-2, the plaintiff applied to be moved to Special Management 3. Although he was moved back to Unit B-1, within 72 hours, the defendants tried to move him back to B-2. Further, he alleges, the defendants refused his request to move him to Special Management 3.

As relief, plaintiff seeks to be transferred to another correctional facility and requests damages in the sum of Five Thousand Dollars ($5,000.00).

### B. Defendants' Motion to Dismiss

In its motion to dismiss, the defendants asserts several reasons for which the Court should dismiss this case. First, they assert that determinations regarding where an inmate is housed are within the discretion of the Division of Corrections and are not actionable. Second, they contend that the plaintiff failed to exhaust his Administrative Remedies. Third, as governmental officials performing their discretionary functions, they assert that they are entitled to qualified immunity. Fourth, they contend that the plaintiff cannot pursue a §1983 action based on *respondeat superior*, and plaintiff has alleged nothing to impose any liability on defendant Warden Adrian Hoke ("Hoke"). Further, the plaintiff has not stated a claim that is actionable.

Accordingly, the defendants request that the court dismiss plaintiff's claims from the docket with prejudice, award them their costs and expenses and any other relief deemed appropriate.

**C. Petitioner's Response to Defendants' Motion to Dismiss**

Petitioner merely reattaches portions of his initial complaint and copies of administrative remedies, along with a brief statement purporting to clarify his refusal of housing assignment claims. He denies that he ever said that he *was* moved back to Unit B-2, averring that he only meant that defendants told him he was *going to be* moved back there. He avers that he responded to this by advising that he feared for his life and refusing housing three times, for which he spent 120 days in the hole. He contends that after almost four months, he was then moved back to Unite B-1.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. However, that decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is

---

[1] Porter v. Nussle, 534 U.S. 516, 524 (2002).

subject to exhaustion of administrative remedies as required by the PLRA. Nor does it abrogate well-established Fourth Circuit precedent which allows the Court to summarily dismiss a complaint in which the failure to exhaust is clearly evident. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005).

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Here, although the plaintiff does not provide any argument or explanation regarding them, he attaches copies of administrative grievances filed regarding three separate refusal of housing assignment claims, showing that he initiated the first and second levels of the grievance procedure. However, after receiving denials of his claims from the Unit Supervisor and/or Warden, he did not appeal any of the denials to the Commissioner of the Division of Corrections.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003)

6

(remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). To the extent, therefore, that exhaustion may be waived, here, the plaintiff has failed to set forth any accepted reason, let alone any reason at all to excuse his failure to exhaust.

## IV. Recommendation

For the reasons set forth, the undersigned recommends that Defendants' Motion to Dismiss (Dkt.# 16) be **GRANTED**, and the plaintiff's complaint (Dkt.# 1) be **DENIED** for failure to state a claim upon which relief can be granted and **DISMISSED** with prejudice from the active docket of this Court.

Any party may file, **within fourteen (14) days** after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); U.S. v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as

shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: November 28, 2011.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE